**In re John Doss THOMPSON, Jr. and Hiwan Ridge Development Co., Inc., Debtors.**

**The Ridge at Hiwan, Ltd., Appellant,**

**v.**

**John Doss Thompson, Jr. and Hiwan Ridge Development Co., Inc., Appellees.**

**Nos. Civ.A. 98–K–1334, Civ.A. 98–K–1017. Bankruptcy No. 96–14987–RJB.**

United States District Court, D. Colorado.

March 18, 1999.

Brent R. Cohen, Rothgerber, Johnson & Lyons, LLP, Denver, Colorado, for Creditor/Appellant.

James B. Holden, Holden, Padjen & Laufer, LLC, Denver, Colorado, for Debtor/Appellees.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This appeal arises from two orders of the bankruptcy court declining to abstain under 28 U.S.C. § 1334(c) from considering creditor's claim against Debtors in bankruptcy in favor of allowing a retrial of the judgment upon which it was based to proceed in state court pursuant to the state court of appeals' order for remand. The creditor, Appellant The Ridge at Hiwan, Ltd. ("RHL"), contends the refusal to abstain was an abuse of discretion given the parties' stipulation, entered at the outset of the proceedings in bankruptcy, that all actions necessary to securing a final, nonappealable judgment on RHL's state law claims, "including further trial proceedings, if necessary," would be concluded in the state court. I reverse.

## I. BACKGROUND AND PROCEDURAL HISTORY.

This case arose after a Jefferson County jury awarded RHL over $2,600,000 in compensatory and punitive damages against Debtors John Doss Thompson, Jr. ("Thompson") and Hiwan Ridge Development Co., Inc. ("HRDC") in an action for fraud, intentional interference and other business torts (the "Interference Litigation"). On the same day judgment was entered on the jury's verdict, April 26, Thompson and HRDC filed for Chapter 11 protection in the bankruptcy court. On May 8, and notwithstanding the Bankruptcy Code's automatic stay provision, Debtors filed a Rule 59 motion in the state court for judgment notwithstanding the verdict.

On May 20, 1996, while the Rule 59 motion was pending, the parties entered into a Stipulation for Relief from Stay in the bankruptcy court ("Stipulation"). The Stipulation provided for a lifting of the automatic stay provided by 11 U.S.C. § 362(a) *nunc pro tunc* to April 26, 1996, so that the parties could "proceed with bills of costs, post-trial motions ... appeals, and other actions necessary to conclude the State Court Litigation, *including further trial proceedings if necessary.*" Stipulation, filed 5/20/96 (R. Vol. I., Tab 30) (emphasis added). The bankruptcy court entered an order approving the Stipulation the following day. (*Id.,* Tab 31.)

At the Debtors' request, the bankruptcy court established an August 30, 1996 deadline for filing proofs of claim. (R. Vol. I, Tab 89.) After a series of extensions and submissions of revised plans over the course of a year, RHL timely filed a proof of claim on the state court judgment ("Claim No. 8"). By then Debtors' Rule 59 motion had been denied and Debtors' appeal from the judgment was pending before the Colorado Court of Appeals. "In order to preserve their pending appeal," Debtors filed a provisional objection to RHL's Claim No. 8 and asked that their objection be held in abeyance while the state court appeal remained pending. (R. Vol. I, Tab 269.) On July 22, 1997, the bankruptcy court entered an Order "provisionally sustain[ing]" Debtors' objection "pending resolution of the state court appeal." Order (R. Vol. I, Tab 293). "In the event that the RHL judgment becomes a final nonappealable judgment," the court stated, "RHL's claim shall be allowed ... and the Debtors' Objection shall be deemed withdrawn." (*Id.*)

On August 7, 1997, Debtors filed their Third Amended Joint Plan of Reorganization and Fifth Amended Disclosure Statement. In Article VI of the Disclosure Statement, Debtors reiterated their understanding and intent that the Interference Litigation be concluded in state court and incorporated by reference the May 1996 Stipulation:

2. It is Debtors' view that the merits of the interference litigation can only be re-

solved in the Colorado courts, and not in the Bankruptcy Court. Accordingly, the Debtors stipulated to relief from the automatic stay to permit the Interference Litigation to be concluded in the state courts. A stipulation was filed on May 20, 1996 and approved by the Court on May 26, 1996. Disclosure Statement (R. Vol. I, Tab 319) at p. 27. The bankruptcy court approved the Disclosure Statement on August 11, 1997, and instructed that it be submitted to the creditors, including RHL, with the Plan for balloting.

As it happened, the Colorado Court of Appeals issued its decision on Debtor's state court appeal on October 25, 1997, after the Plan and Disclosure Statement were submitted for balloting but before the date set for the confirmation hearing. Rather than moving the Interference Litigation one step closer towards a "final unappealable judgment," the Court of Appeals reversed and remanded the case "to the trial court for a new trial consistent with the opinions herein expressed." Thus, five weeks before the confirmation hearing on Debtors' plan, the contingency anticipated in the original Stipulation and incorporated into the Disclosure Statement had occurred: "further trial proceedings" had become "necessary" and under the Stipulation were going to be concluded in state court.

It is important to note that Debtors did nothing during these five weeks to communicate any change to the reasonable expectation that the parties would return to state court after confirmation to conclude the Interference Litigation. Debtors did not seek to amend their Disclosure Statement. Debt-

ors made no effort to withdraw or alter the terms of the Stipulation. Instead, they proceeded quietly to the confirmation hearing, where RHL withdrew its objection to Debtors' Plan and its own proposed alternative plan and allowed Debtors to proceed unimpeded to confirmation. Order Confirming Plan (R. Vol. I, Tab 392).

While there was some discussion of the Court of Appeals' decision at the confirmation hearing, nothing was said to suggest a change in Debtors' position regarding the expected venue for the "further trial proceedings" which by then had been ordered. In fact, when the court inquired at the hearing as to the parties' intentions in the wake of the Court of Appeals' decision and counsel for RHL responded by saying he expected the case would be retried in the state court, counsel for Debtors neither challenged counsel's statement nor notified RHL of its view, disclosed only after confirmation, that the Stipulation would become void upon the very confirmation it was then seeking. (R. Supp. Vol. I) at pp. 32–36.[1]

On February 17, 1998, immediately after the Colorado Court of Appeals issued an order denying RHL's motion for rehearing, Debtors filed a Supplemental Objection to RHL's Claim No. 8 arguing, for the first time, that the effect of confirmation was to render void the parties' Stipulation and preclude them from going forward in state court at all. Objection (R. Vol. I, Tab 427). Debtors maintained the effect of the order for remand left RHL with nothing more than a disputed and unliquidated prepetition claim that was subject to the discharge granted upon confirmation. (*Id.* at 6–7.) Because a

---

1. Specifically, the transcript of the confirmation hearing reveals that the bankruptcy judge asked whether, in light of the Court of Appeals' decision, counsel had engaged in "any discussions [on] how you want to proceed ... [y]ou want to go back to your state court? ... [d]o you want to do a claims hearing here?" Tr. 12/3/97 Hg. (R. Supp. Vol. I) at pp. 32–33. Counsel for RHL responded that the parties had engaged in "brief discussions about it," but given that RHL had petitioned for rehearing and then might petition for certiorari to the Colorado Supreme Court, felt "it would be inappropriate to try and resolve the claim until the decision is made as to whether or not to proceed in the appellate courts or not." (*Id.* at 33.) "If what happens," counsel

continued, is that it is "decided that there's a retrial necessary as a result of whatever appellate process is forthcoming, then we would ... suspect that the appropriate place to handle that matter would be in the Jefferson County District Court where it was tried in the first instance." (*Id.* at 33–34.) Counsel for Debtors did not disagree with that statement and certainly did not apprise RHL or the court that, in its view, the very confirmation they were seeking that day would preclude retrial in state court in any event. Rather, counsel merely expressed doubt that retrial could be had as "quickly and efficiently" as counsel for RHL had suggested. (*Id.* at 35–36.)

discharge "operates as an injunction against the continuation of an action to collect or recover a debt as a personal liability..... of a debtor," Thompson and HRDC argued both that "RHL is permanently enjoined from continuing action in the State District Court" and the state court is precluded "from entering a judgment against the Debtors." (*Id.*) "The sole remedy now available to RHL is to seek allowance of its claim in the Bankruptcy Court, so that it can share in the distributions under the Plan as an allowed Class 7 [under the Plan]." (*Id.* at 7.)

Debtors acknowledged the Stipulation, but asserted it was reached "early in the case" and no longer had "any vitality" after confirmation. According to Debtors, the Stipulation applied only to the duration of the automatic stay and was superseded by the "permanent bankruptcy discharge of the Debtors" under 11 U.S.C. § 524(a). For obvious reasons, Debtors failed in their Supplemental Objection to mention that they had incorporated the Stipulation into their Disclosure Statement, filed much later in the case, and then submitted those disclosures to RHL for consideration in adjudging Debtors' proposed Plan. Because the Plan was the vehicle upon which confirmation and discharge was to be had, the inclusion of the Stipulation in the Disclosure Statement demonstrated Debtors' intent that the agreement to return to state court for "further trial proceedings" would not terminate upon discharge, but would continue until the state court proceedings were finally concluded.

RHL filed an immediate response, arguing Debtors' turnabout contravened the parties' understanding and the disclosures upon which confirmation had been based and, by preventing RHL from retrying its state law claims against Debtors to a jury, thwarted the Court of Appeals' order for remand. RHL asked the bankruptcy court to abstain from hearing the matter under 28 U.S.C. § 1334(c)(1) or, in the alternative, asked that the reference to the bankruptcy court be withdrawn with respect to Claim No. 8 so that a jury trial could be had in the United States District Court. After a hearing, the bankruptcy court issued its Memorandum Opinion and Order of April 28, 1998, denying both requests and adopting wholesale the arguments in Debtors' Supplemental Objection.[2] (R. Vol. I, Tab 457.)

In its April 28 Order, the bankruptcy court agreed with Debtors that the May 1996 Stipulation applied only for the duration of the temporary stay provided for under § 362(a) and was no longer effective after confirmation and discharge. "By operation of law," the court agreed, "a new and distinct permanent stay or injunction arose when the Debtors received a discharge that prohibits the commencement or continuation of an action ... to recover ... any [discharged] debt." (*Id.* at 5 (citing 11 U.S.C. § 524(a)(2).)) The court noted Debtors had failed to "stipulate to relief from this permanent stay or injunction" and expressed "doubt" that the state could enter a final judgment in the face of it in any event. (*Id.* at 5, 7.)

That this result thwarted the Court of Appeals' order for remand was deemed immaterial. According to the bankruptcy court, the reversal "voided the entire state court trial proceeding" that had taken place before October 25, 1997, such that RHL had never had anything but an unliquidated prepetition claim. RHL's proof of claim, then, was an unequivocal submission to the authority of the bankruptcy court to decide the matter and constituted and divested the state court of further jurisdiction over them.

> It's just as if the state court trial never happened. Having thus voided the entire state court trial proceeding, all RHL was left with was a contested, unliquidated prepetition claim against the Debtors. No reasons have been put forth why RHL's claim should now be considered different from any other contested, unliquidated, pre-petition claim where a state court suit was commenced, but not concluded, before the bankruptcy was filed.

(R. Vol. I, Tab 457 at p. 6.) With respect to RHL's right to retry its case to a jury as it had originally, the court deemed it "fundamental bankruptcy law that when a creditor

---

2. It referred RHL's request for withdrawal of reference to the District Court, where it was assigned Civil Action No. 98–K–1017. By separate order in that case, the request is denied.

files a proof of claim against a bankruptcy estate ... the creditor forfeits its right to have its claim determined by a jury." Order at 5–6 (citing *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990)).

Having given the Court of Appeals' reversal this retroactive effect, the bankruptcy court effectively disposed of both the state court's order remanding the case for retrial and the parties' stipulated agreement that any retrial take place in state court. The only issue that remained, the court concluded, was RHL's request for abstention. This issue, the court reasoned, turned on which forum offered the most expeditious means of liquidating RHL's claim. Mem. Opinion & Order (R. Vol. I, Tab 457) at p. 6. *See also* Tr. of Confirmation Hg. (R. Supp. Vol. I) at pp. 32–34. Finding it "doubtful that the state courts wants to go through a jury trial just to 'liquidate' RHL's claim," the bankruptcy court determined it could conclude the matter "much quicker because there would be no jury to qualify and impanel." Mem. Op. & Order at 6–7. "[T]his court has a real interest in insuring that this bankruptcy case proceed as quickly as possible so that it can issue a final decree and close the case ... [and] is not apt to continue the matter because of the press of other business as would face the state court, which has to juggle other priorities such as criminal cases." *Id.* at p. 7. I note that at the time, retrial in the Jefferson County District Court was set to commence on October 25, 1998.

RHL filed a Motion to Alter or Amend the April 28 Order on May 11, 1998, urging the court to reconsider its refusal to abstain and arguing for the first time that abstention was mandatory under 28 U.S.C. § 1334(c)(2). (R. Vol. I, Tab 463.) RHL maintained Debtors' Disclosure Statement "locked jurisdiction [over] the RHL claim in the state court" upon confirmation and argued the bankruptcy court was without subject matter jurisdiction to hear RHL's Claim thereafter. After hearing argument on RHL's Motion, the bankruptcy court denied it summarily from the bench. Minutes of Proceedings (6/8/98) (R. Vol. I, Tab 474). This appeal ensued.

RHL obtained a stay precluding any action on Claim No. 8 pending appeal, and the matter was set for expedited briefing and argument. Briefing was complete in late August, and argument was heard September 1, 1998. The parties' presentations convinced me reversal was warranted, and I took the matter under advisement to prepare a written decision. Given the nature of the case and the press of business, the October state court trial date came and went before I could issue a decision. In the interim, proceedings on Claim No. 8 in the bankruptcy court remain stayed.

## II. *STANDARD OF REVIEW.*

■■■ The bankruptcy court's refusal permissively to abstain from considering RHL's Claim No. 8 is reviewed for abuse of discretion. Were I to reach the issue of mandatory abstention under 28 U.S.C. § 1334(c)(2), review would be *de novo*. I find the issue more appropriately one of permissive abstention,[3] and review the April 28 decision of the bankruptcy court under the former standard.

## III. *DECISION.*

■■■ The bankruptcy court's refusal permissively to abstain was premised on three legal conclusions: (1) that the parties' agreement to resolve the merits of RHL's claims in state court endured only for the duration of the automatic stay; (2) that, once the jury verdict and resulting state court judgment was reversed, RHL's Claim No. 8 reverted to a contested, unliquidated prepetition claim which RHL had submitted to the sole authority of the bankruptcy court and over which RHL had waived all rights to proceed in state court, under the rule of law articulated in *Granfinanciera, SA v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (*applied in Langenkamp* ); and (3) that the state court could not enter final judgment on retrial in any event because of the permanent

---

**3.** I find the case upon which RHL bases its mandatory abstention argument, *Wilson v. Bill Barry Enterprises, Inc.*, 822 F.2d 859, 861 (9th Cir.1987), sufficiently distinguishable on its facts to dissuade me from adopting it as grounds for reversing the bankruptcy court's decision. That is not to say that RHL's argument is without merit, but only unnecessary to my decision today, which is based on a theory of permissive abstention.

injunction provided by 11 U.S.C. § 524(a)(2). These conclusions are wrong under the circumstances and law of this case.

The parties to this case specifically and unequivocally agreed to adjudicate RHL's state law claims to conclusion in state court. The agreement was formalized in a written Stipulation, and the Stipulation was entered as an order of the court. When the Interference Litigation had yet to be concluded at the time Debtors were finalizing their third amended Plan for reorganization, the Stipulation was included as an express term upon which approval for the Plan was solicited.

The agreement to lift the automatic stay to pursue the Interference Litigation in state court was not some temporary or incidental aspect of the bankruptcy process; it was its essence. The RHL judgment formed the entire basis for Debtor's bankruptcy petition and its viability, or lack thereof, was the issue around which all others turned. The purpose of bankruptcy was to protect and preserve Debtors' business while the parties resolved this ultimate issue in the state courts. In the interim, the parties would preserve their rights in bankruptcy and a reorganization plan would be negotiated that would satisfy RHL and the court whatever the final disposition of RHL's claims in state court, i.e., whether they were reduced to a final, nonappealable judgment in RHL's favor or, as Debtors hoped, whether they were ultimately and finally rejected. In either event, the Stipulation reflected the parties' intent from the outset that the bankruptcy process was to be derivative and secondary to the ongoing proceedings in state court.[4]

The bankruptcy court erred in limiting the effect of the parties' agreement to the duration of the automatic stay. Debtors' reiteration of this agreement in their Disclosure Statement demonstrates it was intended to extend beyond the temporary relief afforded by the automatic stay and become a condition of the permanent relief afforded Debtors upon discharge. The purpose of a disclosure statement under 11 U.S.C. § 1125 is to provide holders of claims with "adequate information" to make an informed judgment about a proposed plan. By designating their commitment to see the merits of RHL's claim through to conclusion in the state court as an item upon which RHL was to judge the Plan, Debtors were precluded, even estopped,[5] from reneging on their agreement as soon as RHL's approval was secured.

Under the view adopted by the bankruptcy court, a debtor would be free to solicit creditor approval for confirmation with promises it had no intention of keeping and would disclaim as soon as approval was secured. In the instant case, Debtors reserved their right to challenge the merits of RHL's claims in the state court with the express understanding that this might require "further trial proceedings, if necessary." Stipulation & Joint Mot. for Approval (R. Vol. I, Tab 30) at ¶¶ 5, 6 (stating that RHL "wish[ed] to have the ability to take further action in the State Court Litigation" in the event the jury's verdict were "set aside," and Debtors "wished to have the ability to respond to such actions"). Debtors reiterated this commitment in their Disclosure Statement and said nothing to indicate a change of heart when, in fact, the verdict was "set aside" and further trial proceedings were ordered. Instead, Debtors pro-

---

4. As RHL points out in its reply brief, this is hardly a novel approach to the liquidation of claims in bankruptcy proceedings. Claims are commonly liquidated in state court, as is illustrated by Local Bankruptcy Form 401.2, titled "Order Granting Relief From Stay," which provides a box to be checked where relief from stay is sought "to proceed with the liquidation of claims ... presently pending in _____." There is no indication in the form or otherwise that the relief from stay is only operative to the point of discharge, when liquidation becomes the sole prerogative of the bankruptcy court notwithstanding the order and notwithstanding the status of those claims elsewhere.

5. To the extent RHL changed its position (i.e., withdrew its objection to Debtors' Plan and own proposed alternative plan) in reliance on Art. VI, paragraph 2 of the Disclosure Statement, Debtors may be estopped to deny their agreement to conclude the Interference Litigation in state court. To the extent Debtors had no intention, post-confirmation, to comply with Article VI, paragraph 2 of their Disclosure Statement, RHL's change of position may have been induced by fraud.

ceeded silently to confirmation and, once their Plan was confirmed, claimed the state court litigation was frozen at reversal and that RHL had no rights under the Stipulation or Disclosure Statement to take the "further action" bargained for and relied upon.

By sanctioning this conduct, the April 28 Order not only undermined RHL's rightful expectation of integrity in the confirmation process and previous orders of the court, but it also usurped the state Court of Appeals' order for remand. The Court of Appeals's October 1997 decision and order for retrial "consistent with the views expressed herein" constituted the law of the case and was entitled to comity. The suggestion that the reversal in this case "voided the entire state court trial proceeding.... as if [it] never happened" is patently erroneous given the parties' Stipulation and the simultaneous order for retrial.

■ The bankruptcy court's conclusion that RHL's proof of claim constituted a waiver of its right to jury trial on retrial under *Langenkamp* and *Granfinanciera* was equally wrong. These cases simply do not apply where, as here, the proof was filed to protect an existing state court judgment, entered on a jury's verdict, which was then on appeal, where the parties had stipulated and the bankruptcy court ordered that the appeal and any "further trial proceedings" that resulted from it would be concluded in state court. RHL's proof of claim was not filed in a vacuum but specifically to preserve its rights in bankruptcy during the pendency of Debtors' appeal from the merits of its claim in state court. A judgment creditor will not be deemed to have waived its prepetition jury right in the state court system under these circumstances.

## IV. *CONCLUSION.*

The bankruptcy court's order lifting the automatic stay so that the parties could pursue the Interference Litigation to final conclusion in the state court formed the basis for every other action taken in the bankruptcy proceedings thereafter. It formed the basis for RHL's Claim No. 8 and the reason why Debtors' objection to the claim was "provi-

sionally sustained." It was reiterated in Debtors' Disclosure Statement and formed a basis upon which RHL's approval for Debtors' confirmation Plan was sought. To the extent the bankruptcy court's April 28, 1998 Order contravened these previous orders, it undermines the integrity of the judicial process and constitutes an abuse of discretion. Parties must be able to rely on the effectiveness and enforceability of their agreements and of the court's orders adopting them, particularly where one of the parties no longer wishes to be bound and the other has changed its position in reliance on it.

The bankruptcy court erred in concluding the Stipulation lost its vitality upon confirmation and in applying the Colorado Court of Appeals's reversal retroactively to transform RHL's proof of claim into a *Granfinanciera*-type waiver of its rights. And to the extent its refusal permissively to abstain from considering the merits of RHL's claim was premised on factors of speed and economy independent of its legal conclusions regarding the vitality of the Stipulation and the effect of the order for remand, it was an abuse of discretion. The integrity of the process and judicial comity required that the state court of appeals's decision and order for retrial, which constituted the law of the case, be given deference and far outweighed the bankruptcy court's interest in the quick administration of the bankruptcy estate.

The April 28, 1998 decision of the bankruptcy court is REVERSED and the matter is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.